IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BLANCHE A. BROWN,                    :
                                     :
            Plaintiff,               :
                                     :
      v.                             :        Civil Action No. 21-829-RGA
                                     :
UNITED STATES, et al.,               :
                                     :
            Defendants.              :

---

### MEMORANDUM OPINION

Blanche A. Brown, Atglen, Pennsylvania.  Pro Se Plaintiff.

David C. Weiss, United States Attorney, and Jacob Laksin and Shamoor Anis, Assistant United States Attorneys, Wilmington, Delaware.  Counsel for Defendant United States.

Colleen D. Shields, Esquire, and Alexandra Rogin, Esquire, Eckert Seamans Cherin & Mellott LLC, Wilmington, Delaware.  Counsel for Defendant Thomas Jefferson Oral & Maxillofacial Surgery

March *9*, 2023
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Blanche A. Brown appears *pro se*.  She commenced this lawsuit on June 7, 2021.  (D.I. 1).  The thirty-three page Amended Complaint is the operative pleading. (D.I. 4).  Before the Court is a motion to dismiss (D.I. 37) filed by the United States ("the Government").  The motion has been fully briefed.  (D.I. 37, 43, 44, 45, 46).

I.      BACKGROUND

I take the factual allegations of the Amended Complaint as true and construe them in the light most favorable to Plaintiff.  For purposes of this factual narrative, I have considered Plaintiff's administrative claims against the United States Department of Veterans Affairs ("the VA") in parsing her allegations.  (D.I. 40).  I have also considered Plaintiff's briefing (D.I. 43, 44, 46) in response to the Government's motion to dismiss to help contextualize and clarify the allegations in the Amended Complaint, which are difficult to follow.

Plaintiff is a 100% disabled veteran and beneficiary of Veterans Administration benefits.  (D.I. 4 at ¶ 5).  Her disability is due to a cardiac condition.  (*Id.* at ¶ 13).

In May 2019, Plaintiff fractured a molar eating food purchased at the Wilmington VA Medical Center ("the Wilmington VAMC").  (D.I. 40 at 3).  In June 2019, she visited the Wilmington VAMC, where a dental assistant insisted on placing x-ray plates in her mouth, rather than performing 3-D imaging, and caused her to break a molar on the other side of her mouth.  (*Id.*; D.I. 4 at ¶¶ 25, 51).[1]  The dentist at the Wilmington VAMC recommended extracting the initial broken molar.  (D.I. 4 at ¶ 14).  In July 2019, Plaintiff

_____

[1] In later filings, Plaintiff indicates that the dental assistant broke an additional tooth as well, but this allegation appears nowhere in the Amended Complaint.

1

saw a third-party endodontist, who concluded that the molar could not be restored and recommended that it be surgically removed as soon as possible by an oral surgeon. (*Id.* at ¶ 15).  The endodontist also concluded that it would be a complex procedure, rather than a routine extraction.  (*Id.*).  Specifically, Plaintiff was told it would be "a complex procedure requiring sedation, cutting and sutures."  (*Id.* at ¶ 24).

During an August 2019 assessment appointment at the Wilmington VAMC, Plaintiff requested a pre-operative meeting with an oral surgeon to discuss the procedure, her concerns, and what to expect.  (*Id.* at ¶ 16).  Plaintiff expressed her preference that a licensed oral surgeon, not a trainee, perform the procedure.  (*Id.* at ¶ 18).  She also requested a guarantee of hospital admission and an overnight stay following the procedure, which she believed would be an extensive surgery, because of her medical conditions, including her cardiac condition, anxiety, and susceptibility to infections; her history of bleeding during other surgeries; the likely effects of anesthesia, and the danger of making the one-hour drive home on a dangerous interstate highway following surgery that would involve bleeding, throbbing, pain, and blurred vision.  (*Id.* at ¶ 17).  A dental assistant stated that Plaintiff had no choice as to who performed the procedure.  (*Id.* at ¶ 18).  The VA dentist did not refute this declaration, and told Plaintiff she could take up her concerns with the attending oral surgeon, who would have the final say.  (*Id.*).

On August 23, 2019, Plaintiff presented at the Wilmington VAMC for what she believed was a consultative appointment and saw Dr. G. Joel Funari, a licensed oral surgeon and independent contractor with the Wilmington VAMC.  (*Id.* at ¶ 19).  Dr. Funari is affiliated with Thomas Jefferson University Hospital, which is a training partner

2

of the VA's Graduate Medical Education ("GME") training program. (*Id.* at ¶ 4).[2]  During the appointment, Dr. Funari advised Plaintiff that he and a trainee were prepared to perform the extraction. (*Id.* at ¶¶ 19, 20).  Plaintiff thought the appointment was a consultation only and, because she believed the tooth extraction was a complex procedure, she reiterated her preference that a licensed provider, rather than a trainee, perform the procedure. (*Id.* at ¶¶ 19-21).  Dr. Funari did not conduct even a cursory examination of the molar and, after mischaracterizing the procedure as routine, he baselessly denied and disparaged Plaintiff's request for guaranteed admission and an overnight stay. (*Id.* at ¶¶ 20-22).  The Wilmington VAMC Dental Chief, and other VAMC employees, "stood by with their hands in their pockets and watched (allowing) [Dr. Funari] to run roughshod over [Plaintiff] and make decisions about [her] care—absent input from Plaintiff and to [Plaintiff's] detriment." (*Id.* at ¶ 22).  Plaintiff asserts, "Wilmington VAMC administrators effectively abdicated their own authority and responsibility—and improperly conferred patient treatment authority to [Dr. Funari]— even though the decision was based on unlawful retaliation." (*Id.*) (capitalization altered).

Dr. Funari's medical notes in Plaintiff's chart refer to Plaintiff's demand for an overnight hospitalization for the procedure because of a bleeding problem due to leukopenia and a complicated medical history. (*Id.* at ¶ 23).  The notes state that there was no medical indication to admit Plaintiff to the hospital for a routine extraction. (*Id.*).

---

[2] Dr. Funari and Thomas Jefferson University Hospital were also named as defendants in this action.  On March 30, 2022, the Court granted their motion to dismiss the claims against them. (D.I. 41, 40).  Thomas Jefferson Oral & Maxillofacial Surgery was also named in the Amended Complaint and is still a Defendant in this action.

Dr. Funari instructed Plaintiff to contact her primary medical care team at Lebanon

VAMC who then made a referral to her cardiologist.  (*Id.* at ¶ 25).  A Wilmington VAMC

dentist saw no problem with Dr. Funari's notes.  (*Id.*).  Plaintiff's emergency dental issue

was not addressed even after she was medically cleared, and, two years later, in June

2021, it remained untreated.  (*Id.*).  However, in more recent filings, Plaintiff has stated

that the initial molar she broke while eating in the Wilmington VAMC cafeteria in May

2019, which was the tooth at issue during the August 2019 encounter with Dr. Funari,

was safely extracted in December 2021, and the VA provided roundtrip transportation.

(D.I. 44 at 10 n.4; D.I. 50 at 2 n.2).  The molar that was cracked by the Wilmington

VAMC dental assistant during x-rays in June 2019 "is not yet completely repaired."  (D.I.

50 at 2 n.2) (capitalization altered).

    The Amended Complaint contains seventeen counts.  The captions of a count

are not always consistent with the body of the count.  And it is not always clear which

Defendants are supposed to be a defendant in each count.  The Court takes a broad

reading of what Plaintiff claims: Count 1, unlawful discrimination, in violation of Section

504 of the Rehabilitation Act, 29 U.S.C. § 794; Section 1557 of the Patient Protection

and Affordable Care Act, 42 U.S.C. § 18116, the Federal Tort Claims Act, 28 U.S.C.

§ 1346(b), and the United States Constitution; (2) Count 2, violation of the Thirteenth

Amendment to the United States Constitution; (3) Count 3, violation of the Fourteenth

Amendment to the United States Constitution; (4) Count 4, retaliation for Plaintiff

expressing preferences related to the dental extraction in violation of the First

Amendment to the United States Constitution; (5) Count 5, negligence and gross

negligence under the Federal Tort Claims Act and Delaware law; (6) Count 6,

discrimination for failure to accommodate Plaintiff's disabilities in violation of the

Rehabilitation Act and the Affordable Care Act; (7) Count 7, discrimination in federal

programs and retaliation in violation of the Rehabilitation Act and the Affordable Care

Act; (8) Count 8, privacy violations under 5 U.S.C. § 552a, HIPAA, and invasion of

privacy under Delaware law; (9) Count 9, negligence *per se* in violation of federal

statutes, regulations and policies under the Federal Tort Claims Act; (10) Count 10,

negligent entrustment in violation of the Federal Tort Claims Act and Delaware law; (11)

Count 11, negligent breach of the implied covenant of good faith and fair dealing in

violation of the Federal Tort Claims Act and Delaware law; (12) Count 12, tortious

interference with, and breach of, contract in violation of Delaware law; (13) Count 13,

negligent misrepresentation in violation of the Federal Tort Claims Act and Delaware

law; (14) Count 14, breach of fiduciary duty in violation of the Federal Tort Claims Act

and Delaware law; (15) Count 15, negligent training of a VA Clinic dental assistant

Brenda; (16) Count 16, negligent infliction of emotional distress in violation of the

Federal Tort Claims Act and Delaware law; and (17) Count 17, intentional infliction of

emotional distress and willful misconduct and grave indifference in violation of the

Federal Tort Claims Act and Delaware law.

Plaintiff seeks costs, compensatory, consequential, and punitive damages and

injunctive, mandamus, and declaratory relief.

The Government moves for dismissal pursuant to Rule 12(b)(1), for lack of

subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim.  Plaintiff

opposes the motion to dismiss.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).  When considering a facial attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor.  *See In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017).  When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings.  *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

The Government presents both facial and factual challenges to the Court's subject matter jurisdiction.

### B.   Rule 12(b)(6)

In reviewing a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id.* at 94.  A court may consider the pleadings,

6

public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a

claim.  A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint."  The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document.  Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.

*Lum v. Bank of Am.*, 361 F.3d 217 n.3 (3d Cir. 2004) (internal citations omitted);

*see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

1997).

## III.   DISCUSSION

### A.   Rehabilitation Act and Patient Protection and Affordable Care Act

Counts 1, 6, and 7 raise disability discrimination, failure to accommodate a disability, and retaliation claims under the Rehabilitation Act and the Affordable Care Act.  The Government seek dismissal on the grounds that these Counts fail to state claims upon which relief can be granted.[3]

Section 504 of the Rehabilitation Act prohibits programs that receive federal funds from discriminating against an individual based on disability, as follows:  "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).  Section 1557 of the Patient Protection and Affordable Care Act provides that "an individual shall not, on the ground prohibited

---

[3] The Government incorporates by reference Dr. Funari's arguments in his motion to dismiss these counts.  (D.I. 37 at 14, 18).

under . . . section 794 of Title 29, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under, any health program or activity, any

part of which is receiving Federal financial assistance, including credits, subsidies, or

contracts of insurance, or under any program or activity that is administered by an

Executive Agency or any entity established under this title (or amendments).  The

enforcement mechanisms provided for . . . section 794[4]. . .  shall apply for purposes of

violations of this subsection."  *See* 42 U.S.C. § 18116.  "For disability-discrimination

claims, the [Affordable Care Act] incorporates the substantive analytical framework of

the [Rehabilitation Act]."  *Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370,

378 (5th Cir. 2021) (citing *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235,

239 (6th Cir. 2019)).  Therefore, the Court analyzes the Rehabilitation Act claims and

Affordable Care Act claims together.

To the extent that Plaintiff seeks damages, the Court *sua sponte* concludes that

these claims are barred by the Government's sovereign immunity and therefore will be

dismissed for lack of jurisdiction under Rule 12(b)(1).  *See United States v. Bein*, 214

F.3d 408, 412 (3d Cir. 2000) ("[A] claim of sovereign immunity advances a jurisdictional

bar which a party may raise at any time, even on appeal, and which the court may raise

*sua sponte*.").  Section 504 does not contain a waiver of sovereign immunity for

damages claims against federal agencies, such as the VA.  *See Lane v. Pena*, 518 U.S.

---

[4] Exhaustion of administrative remedies before suing on a Section 504 claim is not required when a plaintiff does not sue a federal agency for employment discrimination and claims do not "have the effect of circumventing some other Congressionally mandated exhaustion requirement."  *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000).

9

187, 197 (1996) ("Congress has thus spoken to the question of remedies in § 505(a)(2), the only 'remedies' provision directly addressed to § 504 violations, and has done so in a way that suggests that it did not in fact intend to waive the Federal Government's sovereign immunity against monetary damages awards for Executive agencies' violations of § 504(a)."); *see also Kowalski v. Postmaster Gen. of United States*, 811 F. App'x 733, 737 (3d Cir. 2020).

To the extent that Plaintiff seeks injunctive relief, Counts 1, 6, and 7 are each moot or fail to state a claim. To state a claim under the Rehabilitation Act, a plaintiff must establish that "[1] he is a qualified individual with a disability, [2] who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, [3] by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019); *see also Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). To the extent that this Count seeks injunctive relief based on the molar Plaintiff broke in May 2019, the claim is moot as the molar has now been "safely extracted" (D.I. 50 at 2 n.2), and the claim will therefore be dismissed for lack of jurisdiction under Rule 12(b)(1). *See Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). To extent the Count seeks broader injunctive relief based on Plaintiff's assertion that the VA "target[s] and exploit[s] (and indentur[es]) [disabled veterans] as commodities and a readily available pool of non-consenting and involuntary human subjects and 'Teaching & Training Tools' for GME Affiliate's trainees" (D.I. 4 at ¶ 42), Plaintiff's claim is insufficient to state an actionable claim for disability discrimination, is therefore subject to dismissal under Rule 12(b)(6), and amendment is

futile.  For these reasons, the request for injunctive relief on statutory grounds at Count 1 will be dismissed.

Plaintiff alleges a failure to accommodate when she was refused her request for guaranteed inpatient hospitalization following the extraction of her tooth.  Section 504 of the Rehabilitation Act imposes a duty on federally funded programs to make reasonable accommodations, although not "fundamental or substantial" ones, when necessary to assure "meaningful access."  *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985); *see also Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 114, 115 (3d Cir. 2018).  Because this claim for injunctive relief is clearly directed at Plaintiff's August 2019 experience, it is now moot in light of the safe extraction of the broken molar.  The request for injunctive relief at Count 6 will therefore be dismissed under Rule 12(b)(1).

Plaintiff alleges that both Dr. Funari's refusal to guarantee her admission following her tooth extraction and his notes in her medical record were retaliation for her requests that the extraction be performed by a licensed surgeon and for guaranteed admission following the tooth extraction.  To state a claim for retaliation under the Rehabilitation Act, a Plaintiff must show (1) that she engaged in a protected activity, (2) that defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action.  *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  This claim for injunctive relief is also now moot.  Accordingly, the request for injunctive relief at Count 7 will be dismissed under Rule 12(b)(1).

**B.      Constitutional Violations**

Counts 1, 2, 3, and 4 raise claims for violations of the First, Thirteenth and Fourteenth Amendments to the United States Constitution.  The Government seeks dismissal on the grounds that Plaintiff fails to state claims upon which relief can be granted.[5]

To the extent that Plaintiff seeks damages, the Government is shielded from these claims by sovereign immunity, and these claims will be dismissed for lack of jurisdiction under Rule 12(b)(1).  *See FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994) (noting that the Government has not waived sovereign immunity for claims seeking damages against federal agencies for constitutional violations).[6]

As with Plaintiff's claims under the Rehabilitation Act and the Affordable Care Act, her constitutional claims for injunctive relief are either moot or fail to state a claim.

---

[5] The Government incorporates by reference Dr. Funari's arguments in his motion to dismiss these counts.  (D.I. 37 at 14, 18).

[6] I note that allowing Plaintiff leave to amend her pleading to bring these claims against Government officials in their individual capacities under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), would be futile as none of Plaintiff's claims fall within the three categories in which the Supreme Court has permitted *Bivens* actions: 1) violations of Fourth Amendment search and seizure protections, *Bivens*, 403 U.S. at 397; (2) violations of Fifth Amendment due process protections (against gender discrimination), *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and (3) violations of Eighth Amendment protections against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017), and "the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (internal quotations omitted); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("[T]here is no Bivens cause of action for [a] First Amendment retaliation claim").

To the extent that Counts 1, 2, and 3 challenge the GME training program and assert that veterans are forced into "involuntary servitude as un-consenting Human Subjects, Guinea Pigs and training tools" for these institutions, in violation of the constitutional prohibition against slavery and guarantee of equal protection, she fails to state a claim. The Thirteenth Amendment prohibits slavery and involuntary servitude. The allegation that the GME training program results in a medical treatment scenario equivalent to slavery or involuntary servitude is patently without merit. The Thirteenth Amendment claims for injunctive relief at Counts 1 and 2 will be dismissed, and amendment is futile.[7]

Count 3 alleges violations of the Fourteenth Amendment's Equal Protection Clause. The Fourteenth Amendment provides in pertinent part that no "State" shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. An equal protection claim based on action taken by the federal government may be treated as a claim under the Due Process Clause of the Fifth Amendment, which "forbids discrimination in a similar manner" as the Fourteenth Amendment, and under which the analysis of an equal protection claim is the same. *See Matter of Roberts*, 682 F.2d 105, 108 (3d Cir. 1982) (per curiam); *Campeau v. Sandercock*, 2022 WL 1598960, at *2 n.3 (3d Cir. May 20, 2022) (per curiam), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Nov. 9, 2022) (No. 22-661).

Plaintiff's Fourteenth Amendment claim is not based on membership in a suspect class. Rather, her claim appears to be based on her status as a "disabled military veteran with service-connected disability." (D.I. at ¶ 44) (capitalization altered). Having

---

[7] Count 1 broadly references the Constitution, and the Court construes the reference as an attempt to bring a Thirteenth Amendment claim.

not based her claim on membership in a suspect class, in order to state an equal protection claim, Plaintiff needed to "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Plaintiff has failed to do either. In fact, the thrust of her claim is that disabled military veterans with service-connected disabilities are all subjected to the *same* allegedly wrongful conduct—receiving treatment through the GME training program. Accordingly, Plaintiff's request for injunctive relief at Count 3 will be dismissed under Rule 12(b)(6). Amendment is futile.

Finally, Plaintiff's constitutional retaliation claim for injunctive relief at Count 4 is moot because, as is the case with her retaliation claim at Count 7, her allegations are directed at the August 2019 appointment, and the molar in question has since been extracted.

C. **Privacy Violations**

At Count 8, Plaintiff alleges that the Wilmington VAMC failed to protect her patient record and privacy, violated VHA policy 1605, HIPAA, and the Privacy Act, 5 U.S.C. § 552a when it allowed Dr. Funari to improperly access her patient file and enter a defamatory, misleading, harassing and retaliatory treatment note. These claims fail for several reasons. "VHA Directive 1605" "establishes the responsibility . . . for compliance with all applicable Federal privacy and confidentiality statutes and regulations." (*See* D.I. 9-2 at 5, 9). It does not create any legal rights. There is no private right of action to bring a HIPAA claim. *See Johnson v. WPIC*, 782 F. App'x 169, 171 (3d Cir. Oct. 29, 2019) (per curiam); *Fatir v. Phelps*, 2019 WL 2162720, at *12 (D.

14

Del. May 17, 2019).  With regard to the Privacy Act, § 552a(g)(1)(C) provides for a
cause of action against an agency when that agency "fails to maintain any record
concerning any individual with such accuracy, relevance, timeliness, and completeness
as is necessary to assure fairness in any determination relating to the qualifications,
character, rights, or opportunities of, or benefits to the individual that may be made on
the basis of such record, and consequently a determination is made which is adverse to
the individual."  Plaintiff's allegations come nowhere close to stating a claim for a
violation of the Privacy Act.  As for her assertion that Dr. Funari made "disparaging"
comments about her in her medical record, subjective opinions are not actionable under
the Privacy Act.  *See McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) ("[T]he
Privacy Act allows for correction of facts but not correction of opinions or judgments.")
(quotations omitted).

Accordingly, the VHA Policy 1605 and HIPAA claims at Count 8 will be dismissed
under Rule 12(b)(1) for lack of jurisdiction.  The Privacy Act claim will be dismissed
under Rule 12(b)(6) for failure to state a claim.  Amendment is futile.

**D.    Federal Tort Claims Act**

The Government argues that Plaintiff failed to administratively exhaust the
negligent and intentional tort-based claims contained in Counts 8, 9, 10, 12, 13, 14, 15,
and 17, and that the Court therefore lacks subject matter jurisdiction over these claims.

Congress has authorized the Federal Tort Claims Act ("FTCA") as an exclusive
remedy to seek money damages for tortious conduct by agents or employees of the
United States or one of its agencies.  28 U.S.C. § 2679(b)(1); *see also United States v.*

15

*Smith*, 499 U.S. 160, 163 (1991).[8]  The FTCA requires that, prior to commencing litigation, the claimant "shall have first presented the claim to the appropriate Federal agency" for its review.  28 U.S.C. § 2675(a).  If a claimant fails to exhaust this administrative remedy, the district court lacks subject matter jurisdiction to adjudicate the claim.  *Lightfoot v. United States*, 564 F.3d 625, 626-27 (3d Cir. 2009).  The FTCA's procedural requirements are to be "strictly construed."  *Livera v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989).  The allegations presented to the agency matter more than the theory of recovery, such that "a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts."  *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (quotation omitted).  To satisfy § 2675, the plaintiff must provide "written notice of his or her claim sufficient to enable the agency to investigate," and place a value on the claim.  *Id.* at 363-62.

On her November 2020 SF-95 claim form, in the "Basis of Claim" box, Plaintiff listed two claims: (1) the "[w]orsening condition" of the molar she cracked in May 2019 and the Wilmington VAMC's "unreasonable refusal to safely . . . extract" it; and (2) "Iatrogenic Injury," which she described as the Wilmington VAMC dental assistant's

---

[8] With regard Plaintiff's requests for injunctive relief, this Court does not have the authority under the FTCA to grant injunctive relief.  *See Priovolos v. F.B.I.*, 632 F. App'x 58, 59 n.1 (3d Cir. 2015) (per curiam) (citing *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) (recognizing that the FTCA does not authorize federal courts to issue declaratory judgments and injunctions against the United States).

breaking of an additional molar during x-rays and repeated delays in treatment of both

broken molars. (D.I. 40 at 3).[9] In a box for personal injury, Plaintiff wrote:

> Both Wilm VA and LebVA Dental Clinics have turned their back on
> beneficiary since August 2019 by turning a blind-eye to Oral Surgeon's
> misconduct and refusal to perform procedure (because I requested NOT to
> be treated by a TRAINEE) or to accommodate Pt Safety Needs associated
> with IMPAIRED/INJURED DRIVER risks following Surgical Procedure.
> More than a year and a half later.  I STILL HAVE PAIN.  EXTREME
> MENTAL DISTRESS and am at risk of infection.

(*Id.*).  Plaintiff valued her claims at $7.5 million.  (*Id.*).  I will address the claims the

Government argues are unexhausted in turn.

### 1.    Negligence Claims at Counts 5, 9, 10, and 15

As to Plaintiff's claims for negligence under various theories at Counts 5, 9, 10,

and 15, I agree with the Government that Counts 5 and 15 were unexhausted and

therefore subject to dismissal under Rule 12(b)(1) for lack of jurisdiction.  The

negligence and gross negligence claims located at Count 5 are directed at the VA's

practice of using GME training programs.  Even liberally construing Plaintiff's SF-95

claim form, these allegations were not contained therein.  The allegations supporting the

claim at Count 15 for negligent training of VA medical personnel were also not

contained in the SF-95 form.

Furthermore, even if Counts 5 and 15 were exhausted, jurisdiction would be

lacking because the claims would be barred by the discretionary function exception to

liability under the FTCA.  *See CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008)

---

[9] It appears that Plaintiff attempted to write more in this box on the form but ran out of
space and did not heed the form's instructions to "[u]se additional pages if necessary."
(D.I. 40 at 3).

(noting that the Third Circuit has treated the discretionary function exception as jurisdictional).  Under the discretionary function exception, "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty" is excepted from the United States' waiver of sovereign immunity.  28 U.S.C. § 2680(a).  A two-step test is employed to determine whether the discretionary function exception applies: (1) "'whether the action is a matter of choice for the acting employee'"; and (2) "whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'"  *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  This is so because:

> the [discretionary function exception] protects only governmental actions and decisions based on considerations of public policy.  Notably, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Id.* (quotations and citations omitted).  The Third Circuit has explained, "The touchstone of the second step of the discretionary function test is susceptibility to policy analysis." *Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000).

As to Count 5, courts have long held that agency decisions, such as that of the VA to contract with GMEs, are protected from suit under the FTCA by the discretionary function exception.[10]  As to Count 15, the Third Circuit has held, in another case filed by

---

[10] *See, e.g., United States v. Gaubert*, 499 U.S. 315, 323 (1991) ("Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected

Plaintiff, that "alleged negligence by VAMC supervisors and employees in . . . failing to train, supervise, discipline, or fire its employees . . . involve[s] an element of judgment of the sort that the [discretionary function] exception was designed to shield." *Brown v. United States*, 823 F. App'x 97, 101-02 (3d Cir. July 30, 2020) (per curiam) (citing *Mitchell v. United States*, 225 F.3d 361, 363-64 (3d Cir. 2000)). Accordingly, even if exhausted, Counts 5 and 15 would still be dismissed for lack of jurisdiction under Rule 12(b)(1).

As to Count 10, Plaintiff nominally asserts claims for negligent entrustment. The Government correctly notes that a negligent entrustment claim in Delaware may be brought against the owner of a motor vehicle who entrusts it to a driver, while knowing or a having reason to know that the driver is reckless or incompetent. *See Roman v. Brown*, 2019 WL 4121044, at *2 (Del. Super. Ct. Aug. 28, 2019); *see also* Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware § 18.16. Although this case obviously does not involve the entrustment of a motor vehicle, as noted above, an "imperfect statement of the legal theory supporting the claim asserted" is not grounds for dismissal. *Johnson*, 574 U.S. at 11. I will thus construe the claims at Count 10 as asserting garden variety negligence based on the actions and omissions of personnel at the Wilmington VAMC in allowing Dr. Funari to deny Plaintiff's requests for a guaranteed admission following the procedure and for Dr. Funari to perform the procedure rather than a trainee, and in allowing the dental assistant to break an

---

by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs."); *Dalehite v. United States*, 346 U.S. 15, 36 (1953) ("That the cabinet-level decision to institute the fertilizer export program was a discretionary act is not seriously disputed.").

additional molar during x-rays. So construed, I conclude that these claims were exhausted. Regardless, as alleged, they too are barred by the discretionary function exception to the FTCA's waiver of the Government's sovereign immunity for the same general reasons that the claims at Counts 5 and 15 were barred. *See Gaubert*, 499 U.S. at 323; *Brown*, 823 F. App'x at 101-02. Accordingly, Count 10 will be dismissed under Rule 12(b)(6) for failure to state a claim. Because Plaintiff could conceivably state a negligence claim against the dental assistant for allegedly breaking her tooth during x-rays, I will grant Plaintiff leave to amend the negligence claim at Count 10.

The negligence *per se* claims at Count 9 were clearly unexhausted, and thus subject to dismissal under Rule 12(b)(1), except insofar as Plaintiff asserts, "Defendant's refusal to reasonably accommodate Plaintiff['s] disabilities and safety needs that would create foreseeable problems following complex oral surgery" constituted negligence *per se* by violating the patient rights contained in 38 C.F.R § 17.33. The Government was arguably put on notice of this claim in the SF-95 claim form, such that an investigation into the claim could have been conducted.

Under Delaware law, violation of a statute, regulation having the force of statute, or certain regulatory standards or practices, may qualify as negligence *per se*. *See Price v. Blood Bank of Del., Inc.*, 790 A.2d 1203, 1213-13 (Del. 2002).[11] However,

---

[11] Although the Government asserts that a negligence *per se* claim brought under the FTCA cannot be solely based on a breach of federal law, the caselaw leaves this determination up to the state common law and, in Delaware, it appears that a breach of a federal statute or regulation can constitute negligence *per se*. *See Cecile Industries, Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986) ("The failure to follow a federal regulation may be negligence *per se* if, under state law criteria, it may be considered the kind of . . . regulation violation of which is negligence *per se*.") (alteration original)

Plaintiff has not stated a claim for negligence *per se* because she fails to cite any particular provision of the recitation of patients' rights contained in § 17.33 that was allegedly violated and, based on my review of § 17.33, the individual provisions listed therein lack the specificity required to establish a negligence *per se* claim under Delaware law.  In so concluding, I look to the Delaware Supreme Court case of *Joseph v. Monroe*, 419 A.2d 927 (Del. 1980).  The negligence *per se* claim in *Joseph* was based on a school district board of education regulation requiring "vaguely that a playground area be made 'pleasant and safe' and that '[staff] members on playground duty * * * be aware of what is happening on the playground at all times'" because "it contain[ed] no sufficiently specific statement of supervisory duty, the violation of which would constitute negligence as a matter of law." *Id.* at 931 (first two alteration in original).[12]  Here too, § 17.33 contains no specifically elucidated statements of supervisory duty that would give rise to a negligence *per se* claim.  For these reasons,

---

(quotation omitted); *Price*, 790 A.2d at 1213 (recognizing a negligence *per se* claim based on violation of federal administrative regulation, provided that causation could be shown); *Wright v. Moffitt*, 437 A.2d 554, 557 (Del. 1981) (noting that causation is a required element of negligence *per se* claims in Delaware).

[12] The Delaware Supreme Court in *Joseph* also rejected the negligence *per se* claim because there was no relevant "penalty or enforcement provision," and "[i]t would seem highly illogical to permit a rule or regulation to be the foundation of a negligence *per se* charge when there is no punishment, civil or criminal, for its violation." 419 A.2d at 932. However, the Delaware Supreme Court has since clarified that existence or absence of a penalty is not dispositive, because "[g]iven the purpose of the negligence *per se* doctrine, its application is not dependent upon a fixed penalty." *Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 16 (Del. 2013).  Therefore, the apparent lack of a penalty for violating the patient's right enshrined in § 17.33, although relevant and cutting against the existence of a proper claim for negligence *per se*, is not dispositive.

to the extent that one negligence *per se* claim at Count 9 was exhausted, it will be dismissed under Rule 12(b)(6) for failure to state a claim.  Amendment is futile.

### 2.      Count 16

The Government does not argue that Plaintiff's claim for negligent infliction of emotional distress at Count 16 was unexhausted.  Regardless, after considering this claim and the SF-95 form, I conclude that Plaintiff failed to exhaust this claim and that it is subject to dismissal under Rule 12(b)(1).  Furthermore, I agree with the Government that, even if exhausted, it must be dismissed under Rule 12(b)(6) for failure to state a claim.  "Under Delaware law, a claim for negligent infliction of emotional distress requires: (1) negligent conduct that proximately causes emotional distress; and (2) the emotional distress is accompanied by non-transitory, recurring physical phenomena." *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 862 (D. Del. 2016); *see also Greene v. United States Postal Serv.*, 462 F. Supp. 2d 578, 580 (D. Del. 2006) (noting that to establish a claim for negligent infliction of emotional distress, the plaintiff "must show that the distress was sufficient to cause physical injury") (quotation omitted). Plaintiff has not alleged that the dental assistant's alleged negligence in breaking her tooth during x-rays caused emotional distress which itself caused a non-transitory recurring physical injury.  Amendment would be futile.

### 3.      Counts 8, 12, 13, 14, and 17

Plaintiff's invasion of privacy claim in Count 8 is unexhausted, as it was based on Dr. Funari's comments in her medical file, which were not referenced in her SF-95 claim form.  Similarly, the SF-95 form would not have sufficiently enabled the Government to investigate Plaintiff's claims for tortious interference at Count 12, negligent

22

misrepresentation at Count 13, breach of fiduciary duty at Count 14, or intentional infliction of emotional distress at Count 17.  These claims too are unexhausted. Accordingly, the invasion of privacy claim at Count 8, and the claims at Counts 12, 13, 14, and 17 will be dismissed for lack of jurisdiction under Rule 12(b)(1).

### E.   Breach of Contract Claims at Counts 11 and 12

Finally, this Court lacks jurisdiction over the breach-of-contract claims at Counts 11 and 12, because Plaintiff sought well over $10,000.  *See, e.g.*, *Petersburg Borough v. United States*, 839 F.2d 161, 162 (3d Cir. 1988) ("Therefore this case involves a contract claim against the United States in excess of $ 10,000 and is within the exclusive jurisdiction of the Claims Court under the Tucker Act. 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1491.").  Accordingly, the breach-of-contract claims at Counts 11 and 12 will be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  *See CNA v. United States*, 535 F.3d 132, 142 n.5 (3d Cir. 2008 (noting that by setting a damages ceiling of $10,000, § 1346(a)(2) placed a restriction on district courts' subject matter jurisdiction).

## IV.   CONCLUSION

For the above reasons, the Court will grant the Government's motion to dismiss, as follows.  The claims for damages at Counts 1, 2, 3, 4, 6, and 7 will be dismissed without prejudice under Rule 12(b)(1).  The claims for injunctive relief at Counts 4, 6, and 7 will be dismissed without prejudice under Rule 12(b)(1).  The statutory claim for injunctive relief at Count 1 related to the Plaintiff's original broken molar will be dismissed without prejudice under Rule 12(b)(1), but the broader request for injunctive relief will be dismissed with prejudice under Rule 12(b)(6).  The constitutional claims for

23

injunctive relief at Counts 1, 2, and 3 will be dismissed with prejudice under Rule 12(b)(6). The claims at Counts 5, 11, 12, 13, 14, 15, and 17 will be dismissed without prejudice under Rule 12(b)(1). The claims under VHA Policy 1605 and HIPAA, and the invasion of privacy claim at Count 8 will be dismissed without prejudice under Rule 12(b)(1), and the claim under the Privacy Act will be dismissed with prejudice under Rule 12(b)(6). The claims at Count 9 will be dismissed without prejudice under Rule 12(b)(1), except for the claim based on the Government's alleged negligent refusal to accommodate, which will be dismissed with prejudice under Rule 12(b)(6). The claim at Count 16 will be dismissed with prejudice under Rule 12(b)(6). Finally, the negligence claim at Count 10 will be dismissed without prejudice under Rule 12(b)(6), and Plaintiff will be given leave to amend the claim.

A separate order shall issue.