## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| **B. Brown** | : |
| **PLAINTIFF** | **CASE NO:** |
| **V** | **1:21-cv-00829-RGA** |
| | : |
| **United States,** | : |
| **Thomas Jefferson Oral & Maxillofacial Surgery** | : **AMENDED COMPLAINT** |
| **DEFENDANTS** | : |

1  *Of all the Forms of Inequality, Injustice in Healthcare[1] is the most*
2  *shocking and inhumane* -----Martin Luther King Jr

3  ### A. OVERVIEW

4       Per <u>March 9, 2023</u> **COURT ORDER**, Plaintiff submits this Amended Civil
5  Complaint.  This Amended Complaint Relates Back  to the Original Complaint (FRCP
6  15) and incorporates the supporting Document Exhibits filed with the initial filing of
7  June 7, 2021 (Doc 1) and the "Amended" complaint (change in headings) filed on June
8  30, 2021 (Doc 4)—which meet the pleading standards set out in FRCP 8

9       As the file shows, Plaintiff submitted her Administrative Claim and <u>SF Form 95</u>  to
10  the Department of Veterans Affairs on November 27, 2020-- pursuant to 28 USC
11  2675(A)[2]  : which requires a sum certain and that the Federal Agency be provided
12  with sufficient facts to allow the agency to investigate the claims put the agency on
13  Notice of the Claim.

14       Additionally, as the record shows, Plaintiff submitted supplemental information to
15  the VA General Counsel (B. Todd) On May 25, 2021 and to VISN 4 on May 27, 2021

16  ### B. RELEVANT BACKGROUND

17       The Veterans Health Administration is the largest integrated health system in the

18  US.  Veterans in general have special needs that differ from that of the general

19  civilian population.

20       Women Veterans are a significantly minority of users of the VA healthcare system, .

21  limiting provider and staff experience meeting their needs in environments

22  historically designed for men.

22

---

[1] According to Medical News Today Sept 2020: Racial Discrimination permeates the healthcare system—including the United States. See also Mattocks, KM: *"Examining Women Veterans Experiences, Perceptions and Challenges  with the Veterans Choice Program* (Med Care 2018)
   It is also well-established that ethno racial minority veterans and women veterans, and older veterans experience healthcare disparities and systemic discrimination (national center for health statistics

[2] See *Tucker v US Postal Service* (3rd Circuit 1982): The SF 95 Form need not list details, Legal Theories or Causes of Action—but only a minimal notice of a statutory claim is required—in other words, any document that identifies the incident or omissions and demands a sum-certain in damages is sufficient.

23    Women Veterans who routinely use VA Primary Care have complex physical and

24    mental health multi-morbidities and these vary by age in marked ways.

25    The VA touts employing "Best Practices" such as Patient-centered Care and wide

26    implementation of "**Trauma-Informed**" approach to treatment and services.  Among

27    the top Patient priority in Trauma-informed care are SAFETY; CHOICE/VOICE;

28    ANTI-BIAS.  Trauma informed personnel are more likely to address issues more

29    effective and efficiently.

30    Despite its soaring rhetoric regarding Caring for those Who served our Country and

31    rhetoric about providing world class care--- studies show that perceived Racial

32    Discrimination among minority veterans using Veterans Affairs healthcare system

33    was equal to Minority non-veterans who did not use Veterans Affairs healthcare.

34    Also,  despite Policy Directives[3]:  Findings  from a 2021 report (Journal of

35    Research)study on Women Veterans Healthcare within the VA System, show and

36    Provider Choice—many women veterans however experience structural barriers to

37    equitable access to VA Healthcare, experience Delayed Healthcare, Experience

38    Inefficient referral processes for community-based care; Difficulty scheduling

39    appointments; Negative Stereotypes and Harassment at VA Facilities.

40    The Department of Veterans Affairs purports to provide eligible veterans with

41    timely, effective world class healthcare—ensuring that veterans have access to the

42    benefits they have earned.

43                                    **C.  JURISDICTION and VENUE**

44    This Court has jurisdiction over this action pursuant to: 28 U.S.C. § 1331 and 1332

45    as well as Subject Matter Jurisdiction Pursuant to : 28 USC 1346b; (Federal Torts

46    Claims act); 2671 et sec;  Section 504 of the Rehabilitation Act; Section 1557 of the

47    ACA 42 USC §18116; 5 U.S.C. §§ 552g of the Privacy Act;, 29 USC 794

48    (Nondiscrimination under Federal Grants and Programs—to include colleges and

49    universities and healthcare entities that receive federal assistance)

49

[3] VHA Policy Directive 1220.01: Health Care for Women Veterans (2017)

50  Venue is Proper in this district pursuant to 28 U.S.C. § 1391, because the acts and

51  omissions giving rise to this action occurred at or on behalf of Wilmington VA Medical

52  Center, which is located in the District of Delaware.

53
54                                    **D.  PARTIES**

55  **Plaintiff** is a citizen of the United States, honorably discharged military veteran

56  and permanently disabled patient who (as Defendant knows)  is also a 100% Disabled

57  Traumatized Cardiac Patient –and with suppressed Leukocytes--who at all relevant

58  times was a qualifying veteran eligible for VA Dental care at Wilmington VAMC.

59  **Federal Defendant is the United States**: through the conduct and omissions of

60  Veterans Health Administration Employees at Wilmington VA Medical Center;

61   **Thomas Jefferson Oral and Maxillofacial Surgery,** is a Wilmington VAMCs

62  Medical Training Partner that receives hundreds of thousands of federal (tax-payer)

63  dollars through the VA's Graduate Medical Education (GME) training Program

64                                 **E.  INTRODUCTION**

65   Congress[4] Has Enacted Numerous Statutes Which Establish and define Statutory

66  Rights of Individuals To Receive Medical Services from the Government.  However the

67  Defendants in this case have repeatedly violated those statutes and breached the

68  implied covenant between this Patient and her Medical Care Providers.

69  Veterans Health Administration (VHA) Medical Centers may **not** charge or force

70  military veterans with 100% **Service-Connected Disabilities** (and other service-

71  connected Disability categories) to PAY for medical or dental care. VHA may **not**

71

---

[4] In a second  (2017) Congressional Hearing before the  Subcommittee  on *Oversight and Investigations*  of The
US House of Representatives Committee on Veterans Affairs— the thematic inquiry for the hearing was entitled:
"*VA and ACADEMIC AFFILIATES: WHO'S BENEFITING NOW*"
   The Subcommittee raised questions about the **fiscal irresponsibility**  as well as **lack of integrity**;  **failed
oversight and  lack of accountability**  --in the Relationships between Veterans Health Administration  and
Affiliate Medical Training partners ---specifically, the  **Graduate Medical Education Program (GME) --on** which
the VA spends more than $700 Million annually—BUT  FROM WHICH, THE VA RECEIVES LITTLE BENEFIT..
   The issues at Wilmington VA Medical Center giving rise to *this* instant civil action is an indication
that in 2019 and 2020 there were no improvements to the problems investigated by Congress.---

72   <u>refuse to treat or establish differential treatment practices for</u> enrolled low-income or

73   disabled veterans or veterans from other protected groups. And they **may not**

74   RETALIATE against Patients who assert their patient rights or make complaints (but

75   they retaliate nonetheless).

76   .                               **F.  <u>VHA DENTAL PROGRAM</u>**

77   ***The VHA's Dental Program***  has established multiple eligibility criteria and

78   Priority Group designations for veterans who wish or seek  dental treatment through

79   the VHA. The Dental Program categorizes veterans into distinct **Priority groups**

80   **identified as  "CLASSES"**

81      Under Priority **Class IV**, VHA is **<u>Mandated</u>** to provide no-cost Dental Treatment

82   for any dental need to **<u>100% Service-Connected Permanently Disabled</u> Veterans**.

83   **Unbeknownst to unwary eligible  Disabled Veterans however is the fact**

84   **that Medical Exploitation of their group Is Integral to the Success of the**

85   **VHA's  Graduate Medical Education Program ( GME) And Research**

86   **Partnerships.**

87      Notwithstanding VA OIG and Congressional Committees uncovering   VHA's

88   mismanagement of funding associated with its GME program --   there is an under-

89   reported but profound additional  and far-reaching downside associated with the

90   dysfunctional relationships fostered in the VA's  GME Program.

91      That is, in the GME programs, VHA representatives and Medical School Affiliates

92   RE-WRITE THE EQUATION—by  re-shuffling the Priorities –in which they

93   REMOVE PATIENT/Veterans as top Priority from the equation and relegate the

94   patient veteran to a parenthetic variable.  In this  re-prioritized partnership

95   relationship, the Medical School Affiliate becomes the Top Priority.  And their agents

96   establish expectations (utilization of Veterans as Teaching Tools and Human Guinea

97   Pigs) to which Veteran/Patients have not consented or agreed.

98      Also,  **VA Medical Center become BROKERS**—in which VHA staff

99   systematically and regularly TARGET, profile and LEASE OUT unwary vulnerable

100   permanently Disabled Veterans (and low-income veterans, and Minority Veterans) --to

101   be exploited and "**utilized" as uncompensated an un-consenting** <u>human subjects</u>,

102   and <u>teaching tools</u> for the medical training and research programs.—**thus placing**

103   **the Veterans with Service Connected DISABILITIES in indentured**

104   **subservient  status**—in exchange for  what VA employees exclaim is "Free

105   Treatment"–even though Congress appropriates funding to cover the  provision of  "no-

106   cost" medical and dental services  to which Service-Connected Disabled Veterans are

107   eligible and entitled (without co-pays).

108                                **G.  GENERAL ALLEGATIONS**

109       If Not For  Wilmington VAMC's Negligence,  Plaintiff-- (whom Defendants knows is

110   a Cardiac Patient with auto-immune challenges and also suffers from service-

111   connected PTSD) Would Not have developed painful INFECTIONS, eating disorders,

112   under-nourishment.  Nor would she be experiencing re-traumatization from the subtle

113   and overt patient abuse, denied and delayed care; prolonged and chronic  Infection,

114   Chronic Pain And Emotional Distress Since  mid 2019---

115       Wilmington VA Medical Center  (Dental Chief)  negligently abdicated complete

116   authority (to Thomas Jefferson Oral & Maxillofacial Surgery training supervisor) over

117   decisions regarding  patient care and  duty of care related to Plaintiff's need for timely

118   Oral Surgery and Trauma-informed  Post Surgery  safety accommodations;

119       Defendant at Wilmington VAMC Dental Clinic failed to exercise due care  in June

120   2019 when dental assistant  (V Haas) negligently broke 2 of Plaintiff's teeth[5] during

121   X-rays (and later taunted Plaintiff in harassing emails a year and a half later—with

122   full knowledge that Plaintiff was still struggling to get cooperation from the VA to

123   have her teeth repaired)

123

[5] In this matter, Plaintiff learned AFTER filing the Civil Action that WilmVAMC Dental Tech (V. Haas) had
fractured a 3rd tooth— (but Dental Chief concealed that fact by refusing to provide Plaintiff a copy of her X-
rays). However, the injury to the back of her Front Tooth (Tooth # 5) manifested itself as sinus pain in late
2021 when Ms Brown drank a cup of Hot Tea.  Ms Brown's new WilmVAMC Dentist (Feinberg) took X-rays
in Early 2022—which revealed a fractured front tooth ( a fact that had been concealed by previous dentists:
Dr. Stanton, and Dr. Saucco).    The Tooth was treated with Root Canal in April, 2022 (nearly 3 years after
the injury was incurred).

124    Wilmington VAMC Dental Chief fomented/ cultivated hostility, resentment and
125    aggression toward Plaintiff.  That aggression and resentment was effectuated by VA
126    Dentist Dr. Saucco on May 6, 2021 following Ms Brown's Oral Hygiene/Cleaning
127    Appointment with a Different clinician.

128    Dr. Saucco requested an un-scheduled session—wherein under the pretext of
129    examining Plaintiff's teeth, Dr. Saucco made hostile comments; And in an act of subtle
130    aggression—prodded, dug, carved into Plaintiff's gums (absent numbing or
131    antiseptic)—drew blood—opening up Ms Brown's gums to infection.  And then falsely
132    told Plaintiff that she needed to have at least 3 or 4 additional teeth extracted—
133    leaving Plaintiff dazed, stunned and stressed.

134    For 2 and a half years, Wilmington VAMC Dental Clinic and Dental Chief have
135    neglected to, then delayed Treating 3 broken molars---all of which were broken at
136    Wilmington VAMC—and 2 of which were broken by carelessness of Dental Assistant
137    V. Haas in June 2019 while she was taking X-rays of Plaintiff's teeth.

138    Wilmington VAMC  not only  (1) promoted patient abuse and (2) was extremely
139    negligent In Providing Timely and Safe Oral Surgery-- but the (3) Wilmington VAMC
140    launched a protracted retaliation campaign in which (4) Wilmington VAMC's refused
141    for 2 and a half years,  to provide minor one-time (trauma-informed) accommodation to
142    ensure Plaintiff's post-surgery safety; (5) initiated Retaliatory Derailment of Plaintiff's
143    Dental Treatment Plan by WilmVAMC Dental Chief (Dr Stanton) and Thomas
144    Jefferson Oral & Maxillofacial Surgery (TJ OMS) staff (G.Funari); ,

145    Moreover, WilmVAMC Dental Assistant (V. Haas)  recklessly  Fractured 2
146    Additional Teeth while taking X-rays, in July, 2019.  And sent  subsequent harassing
147    emails to Ms Brown in late 2020.

148    For 2 and a half years, the WilmVAMC Dental Chief (Plaintiff's original dentist at
149    WilmVAMC) and Dental Clinic Concealed the X-rays---hence the injuries.  The Dental
150    chief also advanced negative narrative about Plaintiff—provoking violence by a staff
151    dentist (Dr. Saucco—who in June 2021 (6) Assault on June 6, 2021 by Wilm VAMC
152    Dentist Dr. Saucco)
153

154 **H.  STATUTORY AND REGULATORY PROVISIONS**

155 **Congress Passed Certain Statutes Making Civil Causes Of Action Available**
156 **In Federal Courts, Along With Other Related Matter**

157 **28 U.S.C. §§ 1346(b), 2671** et seq *Federal Torts Claim Act (FTCA)*
158 Waives the US immunity to suit when an individual suffers loss or injury—and
159 allows monetary compensation to be awarded when those losses or injuries are caused
160 by wrongful or negligence actions or omissions of government employees acting in the
161 scope of their federal employment.  Torts are governed by the forum state in which the
162 Torts occurred.
163
164 **28 USC 2680 (a) DISCRETIONARY FUNCTION EXCEPTION TO WAIVER OF**
165 **IMMUNITY OF THE FTCA**
166 The Discretionary function exception's focuses its protection on REGULATORY
167 and PLANNING Decisions made by HIGH-RANKING government officials[6]
168
169 **28 USC 2680  (h) INTENTIONAL TORTS EXCEPTION**
170 The Government has not waived it Immunity to Suit for 11 enumerated Intentional
171 Torts committed by Federal Employees while acting on behalf of the Gov't
172
173 **38 USC § 7316** Negligence Suite Against VA Employees—
174 Provides that the FTCA (28USC§§1347(b) and 2672 are the Exclusive remedy for
175 damages or personal injury arising from negligence of a health care employee of the
176 VA in furnishing health care or treatment while in the exercise of that employee's
177 duties in or for the VA.  **OF NOTE: paragraph (f) of this Agency statute
178 ABROGATES Paragraph (h) of Section 2680  (the 11 enumerated "Intentional Torts)
179 of the FTCA
180
181 **28 USC 2672: Administrative Claim; requires claimant to file a claim (to**
182 **include sum certain) for relief to the Federal Agency**
183
184 **Privacy Act : 5 USC 552g** (Effectuated through 38 USC VHA Policy Hnbk 16-5.1)
185
186 **28 USC § 2201 Declaratory Judgment Act**
187
188 **5 USC §702 and 703 et seq** Administrative Procedure Act:   Permits claims against
189 Federal Agencies or its Officers  for Injunctive Relief, Mandamus, Declaratory
190 judgment.
191
192 **29 U.S. Code § 794 SECTIONS 504 and 505** of the <u>Rehabilitation Act of The 1978</u>

193 Amendments to Section 504 prohibits discrimination in any program or
194 activity conducted by an Executive Agency or the US postal Services.

194

---

[6] . Cass, supra at 1529-29, 13-31. The very first case interpreting the exception, *Dalehite v US* 1953

195    The 1978 and 1998 amendments to the Rehabilitation Act provide a private right of
196    action under **Section 504** and remedies under section 505[7] (SEE *Smith v United*
197    *States Postal service* 6th Cir 1984; SEE also *Prewitt v United States Postal Serv* 6th
198    Cir1981)
199
200    <u>Section 505</u>  makes Title VI of the Civil Rights Act of 1964 available "to any
201    person aggrieved by any act or failure to act by any recipient of Federal assistance or
202    Federal Provider of such assistance under **Section 504 of the Rehabilitation** Act
203
204    **42 U.S.C. § 18116**: **SECTION 1157 (Anti-Discrimination Law) of** *Patient*
205    *Protection and Affordable Care Act (ACA)* prohibits Disability and OTHER
206    Discrimination in Programs Conducted by Federal Agencies
207        Section 1557 of Patient Protection and Affordable Care Act (ACA), was enacted to
208    ensure that an individual is not excluded from participating in, denied benefits
209    because of, or subjected to discrimination as prohibited under Section 504 of the
210    Rehabilitation Act of 1973 (disability), under any health program or activity, any part
211    of which is receiving federal financial assistance, or under any program or activity
212    that is administered by an Executive Agency . . . [8]
213

214                     **I.  FACTUAL ALLEGATIONS**

215        Plaintiff is a 100% <u>*Service-Connected*</u> Disabled Veteran---making her eligible for
216     VA Dental Care with no  co-pay or other out-of-pocket expenses

217    **<u>Twenty Seven percent  (27%) of Delaware's Veterans have SERVICE-</u>**
218    **<u>CONNECTED Disabilities</u>**.  This number is significant in context of the Veterans
219    Health Administration's (VHA)  priority and under-the- radar practice  of Providing
220    Graduate Medical Education  (GME) Training program financial, material, facility
221    human resources, AND HUMAN SUBJECTS to its Academic Affiliates.
222        That is to say, **100% Service-Connected Disabled** Veterans unwittingly are
223     designated to provide a reliable supply of readily available HUMAN SUBJECTS to
224     the VA's Trainees and faculty  in the VA's Graduate Medical Education (GME) and
225     research programs—in which Thomas Jefferson <u>Oral & Maxillofacial Surgery</u> is a
226     Partner receiving Federal Funds
       226

---

[7] (SEE *Smith v United States Postal Service* 6th Cir 1984; SEE also P*rewitt v United States Postal Serv* 6t Cir
1981)

[8]The ACACA also provides that individuals may also file complaints in court.  Section 1557 creates a
healthcare-specific civil right and specifically prohibits discrimination in health care coverage.

227   **Since 2019 Defendants Systematically Used Misrepresentation And**
228   **Coercion To** effectively INDENTURE Plaintiff ( and likely numerous other Disabled
229   Veterans) because she is a *100% SERVICE-CONNECTED DISABLED* veteran, hence
230   eligible for No-Cost ( no-out-of-pocket co-pay) medical and dental care/treatment.

231   Contrary to Defendants' collective attitude and structured practices: Although VA
232   100% service-connected disabled patients do not incur out-of-pocket expenses, **we do**
233   **not however, relinquish** our rights or humanity and agree to trade servitude for
234   medical care and treatment.

235   Defendants nonetheless, **Removed Plaintiff's  Patient Right OF CHOICE to**
236   **be treated by LICENSED TRAINED SPECIALISTS at the VA. And they**
237   **removed her right to** not to be treated by **trainees (who make more serious**
238   **mistakes than seasoned professionals).**

239   Defendant VA  (Dental Assistant named Brenda while assisting the Dental Chief,
240   Dr. Stanton) admonished Plaintiff  by declaring "***YOU DON'T HAVE A CHOICE***!
241   The Dental Chief did NOT CORRECT her dental assistant's declaration.

242   Other VA employees (to include general counsel) later exclaimed that the VA has
243   obligations to its medical training partners  and that "everybody has to start
244   somewhere—*and the trainees need someone to practice on*".

245   Yet other VA staff  smugly assert that Service-Connected Disabled Veterans *get*
246   "*free services*" and therefore shouldn't be choosy and don't have choices. In other words
247   Disabled patients are served up as pet food for the VA's Pet Project partners.

248   *And it is clear that VA does not believe that even military veterans with*
249   *100% Service Connected Disability should have the freedom, choice or*
250   *opportunity to give fully informed consent (or to DECLINE)  to be used as*
251   *human subjects—or the right to NOT be used as Human Guinea Pigs or*
252   *"teaching tools" in medical training programs.*

253   **Defendants Abused And Harassed Plaintiff For Requesting, in advance,**
254   **Reasonable Disability And  Post-Surgery Safety Accommodations**; and for
255   pursuing patient rights to **Make Decisions and for requesting timely,**
256   **appropriate Individualized  patient care that is in Best interest of Patient**
257   **(not staff)**.

258   **In RETALIATION**, Defendants Refused to mitigate Plaintiff's post-surgery
259   safety risks or Accommodate Plaintiff's disabilities and further Retaliated by spinning
260   chaos to Derail Patient's care and withhold needed (thereby denying crucial treatment
261   for the past 2 years). Defendants improperly accessed Plaintiff's medical files –placing
262   false and defamatory reports meant to discredit Plaintiff and prejudice others--as a
263   pretext for the original discrimination and retaliation—creating reasonable concerns
264   for Plaintiff's physical safety.
265   The lack of treatment and associated chronic pain and anxiety has caused Plaintiff to
266   develop an eating disorder—because eating has

267   **. CONGRESS HAS APPROPRIATED FUNDS TO UNDERWRITE COSTS OF**
268   **CARE TO <u>SERVICE-CONNECTED DISABLED</u> VETERANS AND OTHER**
269   **VULNERABLE GROUPS.**

270   **But Defendants Misrepresent the VA's Provision of Medical And Dental**
271   **Services For, And Mislead Disabled Veterans**

272   Congress has appropriated funding to cover the medical and Dental costs at VA
273   Medical Centers for Veterans who are rated at 100% SERVICE CONNECTED
274   DISABLED— Therefore, contrary to VA Employee and VA Medical Center
275   administrators mischaracterizations, the Treatment that **Service-Connected**
276   **Disabled Veterans** receive at VA facilities without co-pay requirements is **NOT**
277   actually "FREE SERVICES or FREE CARE and TREATMENT" ---for which VA
278   employees apparently believe that eligible veterans are milking the system and for
279   which they should have to pay by alternative means.
280   This is a flawed, but common assumption of many employees. However, Disabled
281   Veterans treatment is NOT free—especially in light of the fact that **NO** VA
282   CLINICIANS, support staff or other EMPLOYEES are expected or forced to volunteer
283   their time and efforts. And NONE goes uncompensated whenever a low-income
284   veteran, indigent veteran or Disabled Veteran with 70% to 100% Service Connected
285   Disability receives "*no-out-of-pocket cost*" MEDICAL CARE or DENTAL CARE
286   through the VA.
287   Therefore, contrary to VA violative and unconscionable human rights practices
288   (which harkens back to darker eras in US history), SERVICE-CONNECTED
289   DISABLED Veterans are should not be treated like indentured servants or detainees

290  without rights.  And we do NOT owe VA employees, the VA or their medical training

291  partners "repayment" or services in any form.

292 **7.**  Nonetheless, Wilmington VA Medical Center's (and other VA's within VISN 4) has
293  essentially **Created a set of unwritten but unethical conditions, burdens and**
294  **requirements** for  **100 % SERVICE-CONNECTED DISABLED patients** (but not
295  for non-disabled patients) that  set's unwritten STIPULATIONS for **Service-**
296  **Connected Disabled Veterans** ACCESS to needed dental treatment for which they
297  are otherwise eligible by regulation and statute

298 **<u>Plaintiff's Enrollment and Eligibility Status for VA Medical Care</u>**

299  •  Plaintiff enrolled in the Veterans Health Administration as a Cardiac and
300  Emergency Open-heart Surgery Patient 10 years ago. Plaintiff's Heart condition
301  is a Permanent Disability as it **substantially limits her major life**
302  **activities.**

303  •  However, Since her enrollment, Plaintiff has been diagnosed with additional
304  disabilities-that are connected to her Military Service (Service Connected)—and
305  which ALSO limit her major life activities.

306  •  Congress has appropriated funding to cover the medical costs at VA Medical
307  Centers for Veterans who are rated at  70% to 100% SERVICE-CONNECTED
308  DISABILITY.

309  .  **Veterans may seek and receive treatment at the Closest VA Facility to**
310  **their homes and which is practical**.  In this matter, Wilmington VA Medical
311  Center is closer to Plaintiff's home than her Primary Care Facility in Lebanon VAMC.

312 **<u>Defendant's Misconduct Giving Rise to Civil Action</u>**

313   **In  July 2019,** Plaintiff sought a 3rd  party opinion with an Endodontist outside of
314  Veterans Health Administration to explore alternatives to TOOTH EXTRACTION
315  which the Wilmington VA Medical Center's dentist so quickly recommended.  Plaintiff
316  sought this 3rd Party opinion also in light of  statements made by a patient advocate
317  about Dental Clinics (specifically VA Dental Clinics) internal practice of selectively
318  referring some groups to Endodontists for root canals, while routinely and reflexively
319  referring patients from disadvantaged groups to oral surgery for EXTRACTION
320  because the investment of time, effort and resources is less for extraction than for root
321  canal or other restorative procedures..

322   **On  August 2019** during a scheduled appointment  (assessment) with her VA Dentist,
323   at Wilmington VA Medical Center, Plaintiff informed her Dentist that the 3rd party
324   **endodontist** (contracted by Wilmington VAMC) recommended that the fractured
325   tooth # 18 (fractured by food purchased at Wilmington VAMC Canteen) cannot be
326   restored (not inclined to make the investment in time, resources and expenditures)
327   and  recommended the less expensive "option"—stating that the molar (Tooth # 18)
328   should be surgically removed by an Oral Surgeon ASAP—and that the procedure is
329   not a simple procedure because of vertical fractures; and the procedure may require
330   cutting into the gum---which would require sutures—making it a COMPLEX
331   procedure (as opposed to a routine extraction).

332   **During the August 2019** general Dentistry assessment appointment, **Plaintiff**
333   **requested an appointment for PRE-OPERATIVE CONSULTATION with the**
334   **ORAL SURGEON**  (separate from and in advance of the surgery appointment) to
335   obtain information about the procedure, discuss her concerns and know what to expect

336   ALSO, Plaintiff , **who lives out of state about an hour drive** from Wilmington
337   VAMC, requested an overnight Stay at the Medical Center  for POST-SURGERY
338   monitoring in light of:

339   • Patient's documented Cardiac Condition

340   • Patient's History of Bleeding (having to be given blood) during 2 previous
341     surgeries

342   • Patient's  intermittent Leucocyte condition that makes her
343     susceptible/vulnerable to infections

344   • Patient's  Documented  Anxiety Disorder

345   • Likely Residual effect of anesthesia

346   • **The Post Surgery Long  and Difficult Drive home** ( time, route and
347     distance) on a very busy and historically dangerous **undivided interstate**
348     highway (Rt 41).

349   • **The Safety issues associated with foreseeable risks of <u>DISTRACTED or</u>**
350     **<u>IMPAIRED DRIVING</u> following the surgical procedure (bleeding,**
351     **throbbing, pain, blurred vision, etc.).**

352   ***Plaintiff ALSO informed her  VA Dentist (Dental Chief, Dr. Stanton) that **she**
353   **PREFERS that the Oral Surgery Procedure be Performed by an experienced**

354  **LICENSED PRACTICING ORAL SURGEON and that it NOT be performed by**
355  **a TRAINEE**.

356      **HOWEVER, The Dental Assistant, with authority, told Plaintiff/Patient,**
357  **"YOU DON'T HAVE A CHOICE!" (about who conducts surgical procedure)**

358      Plaintiff's VA Dentist did NOT refute the dental Assistant's declaration. But
359  instead stated that there will be a Trainee with an attendant Oral Surgeon.

360      Plaintiff's VHA Dentist told Plaintiff that she would have to take up her concerns
361  and requests with the attendant oral surgeon—as he has the final say about what will
362  and will not happen.

363      Effectively, this patient's VA Dentist relinquished authority and stewardship of
364  Plaintiff's care to a 3rd party Teaching Hospital and 3rd Party non-VA contracted
365  consultant and his trainees--Thereby stripping this patient of any voice or decision-
366  making right in her own care and treatment.  Moreover, the VA dental clinic did NOT
367  offer any alternatives—essentially determining that the patient do things their way or
368  do without treatment and care.

369  **On or around August 23, 2019** this VA Patient arrived on time at what she
370  believed was a CONSULTATION appointment with the Oral Surgeon.  However, the
371  Oral Surgeon (Dr. G. Joel Funari) and a Trainee was prepared to PULL Plaintiff's
372  tooth (even though Plaintiff was NOT prepared and had not anticipated having her
373  tooth pulled at that appointment)—absent consultation or any type of discussion---as
374  this Patient had requested earlier through her VA Dentist.

375  As Plaintiff stated earlier, during a July 2019  SECOND OPINION examination, of
376  Fractured tooth # 18, the ENDODONTIST stated that the tooth should be removed
377  ASAP by an ORAL SURGEON.

378  **However, on August 23, 2019** Rather than  conduct even a cursory examination of
379  tooth # 18, the Oral Surgeon (G. Joel Funari)  **instead** attempted to gaslight Plaintiff
380  by negating and diminishing Plaintiffs legitimate MEDICAL and SAFETY
381  CONCERNS as well as Plaintiff's LEGITIMATE requests for REASONABLE
382  ACCOMMODATIONS.

383              IF DR. FUNARI HAD SIMPLY VISUALLY INSPECTED PATIENT'S
384              TOOTH, HE WOULD HAVE SEEN THAT IT WAS FRACTURED AND
385              THEREFORE REQUIRED **A COMPLEX SURGICAL PROCEDURE**—

386     **AND NOT A "ROUTINE PROCEDURE"** AS DR. FUNARI
387     INTENTIONALLY REPEATEDLY MISCHARACTERIZED IT.

388 <u>**Also During the August 23rd "Consultation" appointment (during which there**</u>


388 <u>**Also During the August 23rd**</u> **"Consultation" appointment (during which there**
389 **was no actual consultation or examination)**, Plaintiff "REMINDED" Dr. Funari
390 that the purpose of the appointment was CONSULTATION.

391 **\*\*\*THE DEAL BREAKER <u>on August 23, 2019</u> was when Plaintiff ALSO stated**
392 **her PREFERENCE to have the Oral Surgery performed by an experienced**
393 **LICENSED PRACTICING ORAL SURGEON—and expressly stating that she**
394 **DOES NOT WANT the procedure to be performed by a TRAINEE.**

395  Following what was supposed to be Plaintiff's CONSULTATION Appointment, TJ
396 Oral & Maxillofacial Surgery faculty member-- Oral Surgeon/Trainer (G. Joel Funari)
397 RETALIATED against Plaintiff by **Improperly Accessing Plaintiff's Patient File**
398 **and ENTERING disparaging comments** –which served as a shallow and improper
399 justification for diminishing, disregarding and denying Plaintiff's REQUESTS for
400 Reasonable Accommodations related to Medical Conditions, Anxiety Disorder and her
401 post DRIVING SAFETY CONCERNS.

402  The Wilmington VA Medical Center Dental Chief, and others stood by with their
403 hands in their pockets and watched (allowing)  a non-VA independent contractor to
404 run roughshod over a VA Patient and make decisions about the VA Patient's care—
405 absent input from the Patient and to the patient's detriment.

406  Wilmington VAMC administrators –specifically the Dental Chief--effectively
407 ABDICATED their own authority and responsibility—and improperly conferred
408 patient treatment authority to a non-VA employee—even though the decision was
409 based on unlawful retaliation.

410
411 **. In his August 23, 2019 Written Ranting, Oral Surgeon, (G. Joel Funari)**
412 **IMPROPERLY ACCESSED, Wrote and ENTERED the following disparaging**
413 **note in Patient's medical file:**

414 ***<u>EXCERPT</u>***

415   **LOCAL TITLE: E-ORAL SURGERY CONSULTATION REPORT**
416   **STANDARD**

417    **TITLE: ORAL SURGERY CONSULT**

*DATE OF NOTE: AUG 23, 2019@14:42   ENTRY DATE: AUG 23, 2019@16:01:45*

*AUTHOR: FUNARI,GODFREY J        EXP COSIGNER:*

*URGENCY:*

*STATUS: COMPLETED*

" . . . There is no medical indication for admission after ROUTINE extraction of tooth #18. Additionally, the dental department does not have dedicated beds for admission of patients.

THERE IS NO PRECEDENCE for admitting patients who have undergone routine clinic procedures. The PATIENT'S REQUEST IS EXTRA-ORDINATORY in nature, would incur UNJUSTIFABLE EXPENSE to the VA system and appears to be primarily for her convenience.

Of note is the patient's documented REFUSAL to seek care at her local VA for this complaint.

Patient is DEMANDING overnight hospitalization for the extraction due to:

1. I have a "bleeding problem" due to "leukopenia".

2. I have a "a complicated medical history".

3. "I will be too preoccupied with my surgery to make the drive home on Route 41 afterwards. It is a long and difficult drive.""

TJ Oral & Maxillofacial Surgery Faculty member,  Joel Funari  was completely out of line.  In this specific case with Plaintiff, The extraction procedures,--**according to the Dental Chief at Lebanon VAM (2020)  and Wilmington Private practice Endodontis**t- (Dr. Deborah Pace in 2019)—and even Penn Medicine Oral Surgeon in Nov 2021—would  **NOT be a simple extraction**, but would be a COMPLEX procedure requiring sedation, cutting and sutures.

<u>**Defendants offered NO evidence**</u> that a post-surgery SINGLE overnight stay (for safety reasons and monitoring) OR that Scheduling the Oral surgery with a community-based Provider CLOSER TO HER HOME; or PROVIDING VA TRANSPORTATION TO AND FROM THE SURGERY would over-burden

449   **VA's resources** or **that Plaintiff's patient requests for accommodations and**
450   **safety measures were unreasonable.**

451   **NOR did Defendants offer ANY assurances that this PATIENT would,**
452   **should or could SAFELY DRIVE HERSELF HOME following the surgical**
453   **procedure.**

454   More importantly, Defendant offered NO evidence that their TRAINING
455   commitment and self-interest were worth Plaintiff RISKING HER LIFE and well-
456   being (or that of other drivers who would be on the road while she may become a
457   DISTRACTED DRIVER).

458   Defendant's ranting and demonizing this patient in the above statements serves as
459   a PRETEXT for his RESENTMENT and RETALIATION—which are signaled by his
460   **subsequent Commentary** in the same **August 23, 2019** entry in Plaintiff's Patient
461   Files—wherein he mischaracterized this Patient's Reasonable REQUESTS for safety
462   accommodations and disability accommodations and care provider preferences as
463   "**extraordinary**" and **unreasonable "DEMANDS"**

464   . **On August 23, 2019**, Oral Surgeon G. Joel Funari **ALSO WROTE**:

465   *"Patient Is Also DEMANDING That The Surgery Be Performed By*
466   *A Specialist And Not A "Trainee".*

467   Although Dr. Funari told Plaintiff that as a Medical Doctor, he had Medically
468   cleared Plaintiff for Oral surgery—he nonetheless threw a wrench in the works and
469   derailed Plaintiff's treatment by instructing Plaintiff to contact her Primary Medical
470   Care team at Lebanon VA Medical Center ---who then made a referral to Plaintiff's
471   outsourced Cardiologist (Penn Medicine Heart Center) for a cardiology appointment
472   that would scheduled several months out—causing even GREATER DELAY.

473   Plaintiff informed her Wilmington VAMC dentist that she read Dr. Funari's
474   August 23, memo and that she viewed the memo as hostile,  and inappropriate.
475   However, the Wilmington VA clinician stated that she saw NO problem with Dr.
476   Funari's memo (yet someone later accessed Plaintiff's patient File  and changed
477   portions of  Dr. Funari's August 23 original entry).

478   In the meantime, Plaintiff's EMERGENCY DENTAL matter was not being
479   addressed.  And even AFTER she was medically cleared, Wilmington VAMC and Dr.

480   Funari did NOT treat her Fractured tooth #18 (which had been causing her pain and

481   placing her at risk for months) and no one treated broken tooth # 3 or any other teeth.

482       And NOW 2 years later, Plaintiff's Dental Emergency is still UNTREATED and is

483   complicated by an additional UNTREATED  broken molar –which was broken by a

484   distracted Wilmington VAMC Dental Assistant while conducting X-rays.

485   To compound the problems, in November, 2020 the same Wilmington VAMC Dental

486   Assistance sent Plaintiff hostile electronic messages (blaming the patient for the

487   problems and delays) and placed the derogatory messages in Plaintiff's  Medical

488   patient File.

489

490                    **J.  NATURE OF THE ACTION**

491       Plaintiff brings this action against the United States, and Thomas Jefferson Oral

492   & Maxillofacial Surgery--- for self-serving reckless Indifference, Discrimination,

493   Interference, Retaliation and for violating Plaintiff's Privacy rights, constitutional

494   rights, and statutory <u>Patient Rights</u> and  rights under federal and state laws

495   (UNDER THE RUSE OF "PATIENT CARE").

496   <u>This Is An Action</u> **To Halt And Seek Redress** <u>For Harm Caused</u> by—and to halt

497   Defendants' agency-practice of the unlawful targeting  of, singling out and medical

498   discrimination against DISABLED VA Patients on the basis of  their VA-

499   designation/classification— attached to their rating as veterans with **Permanent**

500   ***Service-Connected*** **Disability.**

501   **9.   The VA's  Criteria Constitutes Deliberate Targeted Discrimination** that

502   the United States  (through VA Medical Centers and Affiliate Medical Education

503   Programs) has been compelling VA Staff, Affiliate Education partners and  Contracted

504   civilian teachers/trainers (such as G. Joel Funari, DMD)-- to routinely practice as a

505   clever, but unethical and unlawful strategy  in which they STIPULATE disabled

506   veterans ACCESS TO TREATMENT on the Veteran's UTILITY as human subjects

507   /and teaching tools—and the VA Medical Center's strategic practices designed to

508   establish and grow a PERMANENT easily accessible and readily available POOL of

509   unwary  and non-consenting human subjects (i.e., human guinea pigs, lab rats,

510   "Teaching Tools") for Medical School Training Programs..

511   **10.   <u>This Action Also Seeks Redress For The Harm</u>** caused by and to halt
512   Defendant VA Medical Center's relinquishing their fiduciary duty and its disregard for
513   the VA's FIRST mission to CARE for  veterans and VA's duty to provide high quality
514   and respectful medical and dental care in accordance with the Patient Rights—  but
515   which the VA sacrifices in deference to  financial incentives for rationing patient care.
516   **11.**   <u>This Action Further Seeks Redress And Relief For The Harm</u> caused by the
517   willful retaliation (gaslighting, harassment, improper entries in Patient's Medical File;
518   sowing chaos among VA care providers; refusing to reasonably accommodate
519   disabilities and safety needs; delaying treatment, ultimately denying treatment)
520   **leveled against Patients/Veterans who self-advocate and those who are not**
521   **willing to participate in or cooperate with Defendant's unethical activities—**
522   which are meant to benefit 3rd Party partners and individual VA employees--at the
523   expense of Disabled Patients/Veterans.

524      At all relevant times Defendant US (through Wilmington VA Medical Center) were
525   federal employees of Wilmington VA Medical Center Dental Clinic
526   Plaintiff was subjected to Patient Abuse, Refusal of Accommodations for her
527   Disabilities and Foreseeable Post-Surgery Disability
528   At all times material hereto, Defendants, as a Medical Care Provider owed a duty to
529   Plaintiff to Provide Timely, Quality Needed Care and Treatment
530      At all times material Defendants owed a duty to Plaintiff (and others similarly
531   situated) to provide REASONABLE ACCOMMODATIONS for their disabilities
532      Also at all times material to this complaint, Defendant owed a Duty to Refrain from
533   and Protect Plaintiff from ALL FORMS OF PATIENT ABUSE (to include physical,
534   verbal, emotional; as well as subtle forms to include, but not limited to Withholding or
535   Delaying Treatment or Care)
536   Defendant breached its duty to Plaintiff in the following particulars:
537   a.  Failed for 2 and a half years to Timely provide Reasonable Accommodations for 2
538       and a half years related to her needed Oral Surgery for Tooth # 18—resulting in
539       infection, pain, nutritional problems for Plaintiff
540   b.  Failed  for going on 3 years--to provide Timely Treatment for Tooth # 3 which
541       Dental Assistant V. Haas Fractured in June 2019 while taking X-rays

542    c.  Failed to Inform Plaintiff  for 2 ½ years that a Front Tooth (Tooth # 5) had also
543        been cracked from behind when Dental Assistant V. Haas misplaced the metal X-
544        ray bracket in her mouth in June 2019
545    d.   Obliquely encouraged—through acquiescence and failure to correct-- hostilities,
546        aggression, retaliatory interference toward Plaintiff by Thomas Jefferson Oral &
547        Maxillofacial Faculty member (G. Joel Funari) of Thomas Jefferson Oral &
548        Maxillofacial Surgery
549    **e.**  Obliquely encouraged and fomented hostilities, aggression, false narrative and
550        subtle violence by Dental Staff, Specifically, Dr. Saucco who bullied Plaintiff and
551        intentionally injured Plaintiff's gums during a unscheduled  post-cleaning
552        "examination**"—causing infection and placing Plaintiff's heart health at
553        risk and further re-traumatizing her.**

554
555             **K.  CAUSES OF ACTION and CLAIMS FOR RELIEF**
556          **First Claim**: GROSS NEGLIGENCE: Against <u>US Defendant</u>
557              **Federal Torts Claims Act 28 USC §1346(b)**
558  **Plaintiff Incorporates And Adopts By Reference All Allegations In All Counts**
559  **Of This Complaint As If Set Out In Full**

560    WilmVAMC Dental Assistant (V. Haas) fractured 2 of Plaintiff's teeth (Tooth # 3
561  and Tooth # 5), during Plaintiff's appointment in June 2019—resulting in painful
562  Infections—and also interfering with Plaintiff's ability to CHEW—hence caused
563  nutrition issues and dramatic (unhealthy) weight loss in a short period of time—which
564  persists still nearly 3 years later  .
565    Ms Haas insisted on placing X-ray plates in Plaintiff's mouth despite Plaintiff's
566  repeated request for External X-rays (panoramic/3-D machine) because of a Broken
567  lower- left rear-most molar—the purpose of her having scheduled the appointment.
568  The technician's refusal to listen to the Patient resulted in the a Molar  (tooth # 3) on
569  the other side of her mouth becoming cracked because the Dental Technician
570  improperly placed the dental plate in Patient's mouth directing her to BITE DOWN.
571  **Unbeknownst to Plaintiff until Nov 2021, the Dental Assistant had ALSO
572  CRACKED one of Ms Brown's Front Teeth (Tooth # 5).  The fracture manifested as
573  pain shooting up through her sinuses and eyes when she drank hot tea.

574  X-rays taken and by a Different Dentist revealed the Fracture—which had always
575  been present—but which Plaintiff's previous Dentist (Dental Chief, C. Stanton) and
576  Dental Clinic Staff had concealed by Refusing to provide copy of Original X-rays.

577  The Same Dental Technician failed to place a return-to clinic order in June 2020
578  and later  (November 2020) verbally attacked Plaintiff—blaming the patient for all of
579  the delays and problems associated with her dental care (or lack thereof) at
580  Wilmington VAMC

581  Tooth # 5 had to be treated by a (painful) Root Canal Procedure.  While Tooth # 3
582  is STILL (March 2023) NOT completely repaired and restored.  The restoration
583  process this far has been very painful and time-consuming and stressful.

584
585  **SECOND** Claim:  **ASSAULT/BATTERY** against <u>US Defendant</u>
586  38 USC 7316 (f) Abrogation of sovereign immunity conferred by
587  FTCA's §28 USC 2680(h)
588
589  **Plaintiff Incorporates And Adopts By Reference All Allegations In All Counts**
590  **Of This Complaint As If Set Out In Full.**

591  **38 USC §7316 (VA Immunity Statute) provide that FTCA is the Exclusive**
592  **Remedy and  mechanism for damages for injury arising from negligence of**
593  **health care employee of the VA in furnishing health care or treatment while**
594  **in the exercise of that employee's duties in or for the VA.**

595  **Paragraph (f) of 38 USC §7316 ABROGATES  the "Intentional Torts**
596  **Exceptions" (to waiver of immunity) in §2680 (h)**

597  In May 2021 WilmVAMC Dentist (Dr. Saucco–WilmVAMC's denture
598  specialist)  RETALIATED  against Plaintiff when she conducted a pretextual
599  unscheduled examination-- following Plaintiff's Oral Hygien Cleaning Appointment.

600  In that examination, Dr. Saucco was unfriendly, she made comments directly
601  related to Plaintiff's administrative Complaint and communiccations sent to VA
602  General Counsel (B. Todd);

603  Dr. SAUCCO DUG INTO PLAINTIFF'S GUMS, DREW BLOOD,
604  REFUSED TO APPLY FLUORIDE AS REQUIRED AFTER DEEP
605  CLEANING (**Resulting in Infection**)

606   And then she told Plaintiff that 3 or 4 additional molars need to be

607   extracted (even though Dr. Stanton had not mentioned, nor was there any

608 indication in Plaintiff's file that she was at risk of loosing any other teeth)

609

610              **THIRD** Claim:  **NEGLIGENCE** against <u>US Defendant</u>

611                         Federal Torts Claims Act

612  **Plaintiff Incorporates And Adopts By Reference All Allegations In All**

613  **Counts Of This Complaint As If Set Out In Full**

614   Wilmington VAMC Dental Chief and Facility Administers had a Duty--but failed to

615  protect Plaintiff from Exploitation, Retaliation and other forms of PATIENT ABUSE

616  by employees and Federally funded GME Partner (TJ Oral & Maxillofacial Surgery).

617   **Instead of Protecting Plaintiff from Abuse, Wilmington VAMC Dental**

618  **Chief, through the Dental Clinic Fostered/Cultivated Hostility (hence Patient**

619  **Abuse) Toward Plaintiff.**

620   Specifically, Wilmington VAMC created an expectation for TJ Oral & Maxillofacial

621  that Plaintiff is a readily available "practice" subject—and therefore could, would and

622  SHOULD be willing to serve as a "Teaching Tool" upon whom Trainees practice (and

623  make mistakes that a licensed practicing specialist is less likely to make).

624   In August 2019 TJ Oral & Maxillofacial Surgery Faculty member (G Funari)

625  responded in an unprofessional and very hostile manner because Plaintiff did NOT

626  meet his expectation (Plaintiff determined that she NOT be treated by a TRAINEE,

627  but instead preferred that her ORAL SURGERY be performed by a LICENSED

628  practicing Oral Surgeon).

629   The Hostile and angry ranting that G Joel Funari Placed in Plaintiff's Medical File

630  in August 2019 not only signaled his own implicit gender and race bias (referring to

631  Plaintiff's self determination in a way that employed double standards)—But more

632  Importantly, caused Plaintiff to become concerned about her own personal safety and

633  well-being.  That is to say, she feared that if she were to have her Oral Surgery

634  performed by Dr Funari, he likely would be overly aggressive and possibly cause

635  injury to Ms Brown.

636   Also, WilmVAMC Dental Chief and Dental Clinic Staff Failed to Protect Plaintiff's

637  Medical File from un-authorized or otherwise malicious access by non-employee G Joel

638  Funari—who, in August 2019- out of retaliation--placed derogatory, prejudicial,
639  demeaning, stigmatizing comments in Plaintiff's file for the purpose of discrediting
640  Plaintiff in the eyes of her Primary Care team and other VA employees who access Ms
641  Brown's Medical File.

642    In September 2019 G. Joel Funari contacted Plaintiff's Primary Care Providers at
643  Lebanon VAMC and gave them intentionally misleading information for the purpose
644  of creating chaos, DELAY  and derailing Ms Brown's DENTAL CARE.  That is to say,
645  Oral Surgeon  G. Joel Funari, purportedly on behalf of Wilmington VAMC—falsely
646  advised Plaintiff's Lebanon VAMC care providers that they need to make a referral to
647  Plaintiff's CARDIOLOGIST who must first CLEAR Plaintiff for Oral Surgery—even
648  though Dr. Funari stated at the August 2019 encounter with Plaintiff-- that he
649  Himself had ALREADY CLEARED her for oral surgery.

650    In November 2020—a year and a half after breaking 2 of Plaintiff's Teeth while
651  taking X-rays, Dental Assistant V. Haas sent (unprovoked) hostile and harassing
652  (passive aggressive)  emails to Plaintiff—in which Ms Haas blamed Ms Brown for the
653  Delays, Barriers, and run-arounds that derail Plaintiff's Dental Treatment.

654    In May 2021 Dr. Saucco, a Dentist under the supervision of the Dental Chief—
655  conducted an unscheduled (post-cleaning appointment) "examination"—in which was
656  verbally hostile and violent—absent numbing meds—but drawing blood, creating gaps
657  between Plaintiff's teeth and gums—resulting in FORESEEABLE INFECTION.

658    In December 2021 following the long-awaited oral surgery which theWilmington
659  VAMC scheduled with a Non-VA Community-based provider, Plaintiff sought a follow-
660  up appointment with Wilmington VAMC dental Clinic's contracted Oral Surgeon (Dr.
661  Habib of Penn Medicine). Dr. Habib placed a hostile note in Plaintiff's record–
662  demanding that the upcoming December 29 appointment be CANCELED and
663  suggested that Plaintiff go back to the provider who performed the extraction.

664
665              **FOURTH** Claim:  **NEGLIGENCE PER SE**:
666      Against US Defendant AND Thomas Jefferson Oral & Maxillofacial Surgery
667   **Violations of Section 1557 of Patient Protection and Affordable Care Act;**
668        **HIPAA; 38 CFR Part 18; Federal Regulation 38 CFR §17.33;**
669              **VA Policy Prohibiting Patient Abuse**

670   **Plaintiff Incorporates And Adopts By Reference All Allegations In All Counts**
671   **Of This Complaint As If Set Out In Full**

672 All of the  Statutes, Regulations and Policies listed above were designed to Protect

673   VULNERABLE INDIVIDUALS and Individuals from Populations that have

674   Historically faced Discrimination.

675 By its very structure the Wilmington VAMC's GME Training Partnership Program targets

676   and exploits Disabled Veterans (the exclusive population eligible for, and therefore

677   comprising the VA Dental Services Programs Patient base).

678  Given Wilmington VAMC's site within an urban center, there is a relatively large

679   "Minority Veteran" population—who are also 70% to 100% disabled---meeting the

680   ELIGIBILITY CRITERIA for VA DENTAL Services.   Hence the GME partnership

681   program also disproportionately TARGETS  DISABLED MINORITY Veterans.

682 The systemic problem is excacerbated by unchecked IMPLICIT BIAS harbored by VA

683   Clinicians as well as  FACULTY from the VA's Graduate Training Program Partner

684   (Thomas Jefferson Oral & Maxillofacial Surgery).

685
686                              **FIFTH** Claim:
687              Prohibited **Discrimination and Unlawful Retaliation**
688        Against Thomas Jefferson Oral & Maxillofacial Surgery Defendant
689              Violation of  Section 504 of Rehabilitation Act (29 USC 794)
690        Violation of Section 1557 of Patient Protection and Affordable Care Act

691   **Plaintiff Incorporates And Adopts By Reference All Allegations In All Counts**
692   **Of This Complaint As If Set Out In Full**

693   Defendant Thomas Jefferson Oral & Maxillofacial Surgery Discriminated against

694   Plaintiff  By Targeting her as an Identified 100% Disabled Veteran (but NOT regularly

695   targeting  non-dsabled veterans—or even non-veterans) to  unwittingly participate as

696   an un-consenting Teaching and Practice Tool for the Trainees from    Thomas Jefferson

697   Oral & Maxillofacial Surgery,

698    The act of systematically targeting for "Trainee practice" the VA's unwary and un-

699 consenting Dental patients who are Identified as DISABLED-- in and of itself

700 constitutes Discrimination (differential access and treatment).

701    Their REFUSAL TO ACCOMMODATE Plaintiff's foreseeable Post Surgery

702 disabling impairments—as well as her associated known Anxiety Disability (PTSD)

703 Constitutes Discrimination.

704    When Plaintiff asserted that she Did NOT want her Oral Surgery to be performed

705 by a TRAINEE (but instead preferred a Licensed, Practicing Oral Surgeon), Faculty

706 member (G. Joel Funary) RETALIATED against Plaintiff by Placing pejorative and

707 prejudicial notes in her Patient File and By Sabotaging Plaintiff's Dental Care.

708

709                                    **SIXTH** Claim:
710                **INTENTIONAL INFLICTION OF EMOTIONA DISTRESS**

711             Against <u>US Defendant</u> AND  TJ Oral & Maxillofacial Surgery Defendant

712 **Plaintiff Incorporates And Adopts By Reference All Allegations In All Counts**
713 **Of This Complaint As If Set Out In Full**

714 Both Defendants Acted in Bad Faith Toward Plaintiff.  They employed Deception,

715 malice, Misrepresentation, Exploitation, Dishonesty---all resulting in Betrayal and

716 Breach of their Duty of Care owed to Ms Brown as a Patient.

717    Their Negligent and Retaliatory Conduct and indifference—beginning in 2019 (and

718 the impact of which continues into 2023) Retaliatory Actions of Wilmington VAMC

719 Dentist, Dr. Saucco—in the form of passive-aggressive violence during unscheduled

720 "examination" in May 2021 caused Ms Brown's gums to become INFECTED and were

721 painful for several weeks—and also creating a great deal of stress—placing Plaintiff's

722 CARDIAC HEALTH at risk.

723  Oral Surgeon, G Joel Funari's written pejorative notes that he placed in Plaintiff's

724 medical file were meant to harm Ms Brown—and to cause problems for her in

725 obtaining timely and proper Dental Care.

726    The injuries caused by WilmVAMC Dental Assistant exacerbated the issues caused

727    by Defendants' REFUSAL to Accommodate and Treat the original Fractured Molar

728    (tooth # 18).  But then Dental Assistant V. Haas Compounded the stress and injury by

729    sending harassing emails in which Ms Haas falsely blamed Plaintiff for the problems

730    she encountered in attempting to receive timely and appropriate dental treatment.

731    The deliberate and careless roadblocks that Delayed Plaintiff's Dental Care—ALSO

732    DELAYED Plaintiff's healing and recovery---triggering RETRAUMATIZATION[9]

733

734    ## L. PRAYER FOR RELIEF

735    Plaintiff, Blanche Brown respectfully requests this Court:

736

737    **A.**  Grant Judgment in Favor of Plaintiff  and Judgment Against Defendant US and
738    Defendant Thomas Jefferson Oral & Maxillofacial Surgery

739    <u>**B.**</u>  Pursuant to FTCA **Award** Money damages against the US, including
740    Compensatory Damages for Pain and Suffering, and for Emotional Distress

741    **C. Award** Money Damages <u>Against  the US</u>: including Damages for Pain and
742    Suffering, Compensatory Damages for emotional distress <u>Pursuant to Section 504</u> of
743    the *Rehabilitation Act* and  <u>Section 1557 of the *ACA*</u>

744    **D.**  Award Money Damages Against  <u>Thomas Jefferson Oral & Maxillofacial Surgery</u>
745    including Damages for Pain and Suffering--Pursuant to Section 504 of the
746    Rehabilitation Act and 1557 of the ACA Pursuant to 28 USC 2201 Declare that

747    **E.  ORDER** -- <u>Pursuant to 5 USC §§701 et seq</u> Wilmington VAMC (through the
748    Secretary of the VA) to modify its  Management of GME and Medical Training
749    Programs practices such that they are aligned with Patient-Centered Care, Trauma
750    Informed Care and the VA's First Stautory Mission (as opposed to its second statutory
751    mission

752    **F**.  **ENJOIN** Wilmington VAMC (and other VISN 4 VA Region) and all others in
753    concert or in participation with the VA from  targeting—and discrimination against
754    Veterans with disabilities and Veterans of Color (as un-consenting default Human
755    Subjects and Teaching Tools for Trainees);  and from failing to comply with VA Non-

755

---

[9] SEE Attached Exhibits: Nov 26, 2021 Message to Psychologist; Also in April 2020 Wilm VAMC Dental Chief felt compelled to Place a Call with LebVAMC for what she perceived to be Plaintiff's mental health crisis associated with her dental issues.

756  Discrimination Policy and from failing to comply with  the Non-Discrimination Policies
757  in Section 504 of the Rehabilitation Act and Section 1557 of the ACE

758  **G. ORDER** Wilmington VAMC to provide TRAUMA-INFORMED Training to its
759  Dental Chief and other VAMC Officers, clinicians, support staff—as well as all GME
760  Program Partners

761

762  PURSUANT TO 28 USC 2201 FEDERAL DECLARATORY ACT: DECLARE THAT:

763  H. Military Veterans rated by the VBA as 70% to 100% Service-Connected Disabled
764  **are entitled to the protections** afforded by the  13th 14th Amendment AND
765  **Section 504 of the Rehabilitation Act** and OTHER Anti-Discrimination Laws
766  enacted to protect disabled individuals and groups

767  I. Military Veterans who enroll in Department of Veterans Affairs Medical Program

768  (Veterans Health Administration) are NOT legally, contractually indebted to the VHA

769  or ethically obligated to forfeit their human rights or patient rights IN EXCHANGE

770  for Medical Treatment from a VA Medical Center or other Veterans Health

771  Administration facility.

772  J. **Any Such Further Relief As The Court Deems Appropriate.**

773                                                    Respectfully Submitted,

774
775  DATED:  March ,  28, 2023                    B Brown,
776                                                    Plaintiff, Pro Se
777

778

779

780

781

782
783

784